09UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

-------------------------------------------------------------------X

JOHN STEVEN HOLLINGSWORTH,

                    Plaintiff,

                    -against-

**MEMORANDUM AND ORDER**
16-CV-4700 (JMA)(AYS)

THEATRICAL TEAMSTERS UNION
LOCAL 817 IBT,

                    Defendant.

-------------------------------------------------------------------X

**APPEARANCES:**

John Steven Hollingsworth
        *Pro se Plaintiff*

Lawrence M. Goodman
Ryan Allen Hancock
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
        *Attorneys for Defendant*

**AZRACK, United States District Judge:**

Pro se plaintiff John Steven Hollingsworth ("plaintiff") commenced this action on July 26, 2016 against Theatrical Teamsters Union Local 817 IBT ("Local 817" or "defendant") alleging discrimination claims on the basis of his national origin, age, arrest and conviction record, and alienage. Plaintiff alleges violations of: Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.; the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290 to 297; and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101 to 131. (ECF No. 2 at 1-6.)[1] Plaintiff also alleges

---

[1] Because the complaint is not consecutively paginated, the Court refers to the electronic document filing system ("ECF") pagination.

retaliation claims pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et. seq., and 42 U.S.C. § 1981, as well as state law claims for negligence, defamation, slander, and intentional infliction of emotional distress.  (Id. at 6-7).  Before the Court is defendant's motion to dismiss the complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2]  For the reasons discussed below, the Court grants defendant's motion as to plaintiff's federal claims and dismisses those claims.  With respect to plaintiff's state law claims, as explained below, plaintiff is ORDERED TO SHOW CAUSE, in writing, by October 31, 2018, why plaintiff's state law claims should not be dismissed for lack of subject matter jurisdiction.

## I. BACKGROUND

The following facts are taken from plaintiff's complaint, the attachments to his complaint, and the papers he filed in opposition to defendant's motion.  Attached to plaintiff's filings are more than one hundred pages of documents, including filings and exhibits submitted by both plaintiff and defendant to the New York State Division of Human Rights ("NYSDHR") as part of administrative proceedings related to plaintiff's claims.

In deciding a motion to dismiss, the Court may take judicial notice of public records, including state court filings.  Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  The Court also considers exhibits that are attached or integral to the complaint.  Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).  Because plaintiff is proceeding pro se, the Court considers plaintiff's factual allegations in his opposition

---

[2] Defendant has moved to dismiss the complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) on the basis that plaintiff's claims are time-barred.  Such an argument, however, is appropriately raised under Rule 12(b)(6) not 12(b)(1).  See Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter."); accord, Johnson v. Astrue, No. 12-CV-2736, 2014 WL 2624904, at *1 (E.D.N.Y. June 12, 2014).

to defendant's motion and in his sur-reply, in addition to the allegations in the complaint.  <u>See</u>, <u>e.g.</u>, <u>Walker v. Schult</u>, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a <u>pro se</u> party in his papers opposing the motion.").

Plaintiff, who was born in Canada in 1961, is a Canadian citizen.  (<u>Id.</u> at 10, 35, 43.)

Plaintiff's claims stem from Local 817's June 18, 2013 removal and permanent ban of plaintiff from defendant's hiring hall referral list ("referral list").  It appears that plaintiff had been on this referral list since 1996 and would obtain work through Local 817.  (ECF No. 2 at 10, 14, 16.)  In May 2013, plaintiff took time off from work to care for his mother, an Alzheimer's patient.  (<u>Id.</u> at 12.)

On June 18, 2013, defendant permanently banned plaintiff from defendant's referral list for threatening to kill two members of Local 817 via a text message sent on May 29, 2013.  (<u>Id.</u> at 21, 25.)  Plaintiff continued working from defendant's referral list daily from the time of the May 29, 2013 text until June 12, 2013. (<u>Id.</u> at 11, 38.)  However, on June 12, 2013, the Executive Board of Local 817 held a hearing concerning the texting incident, in which the Board allowed plaintiff to present information. (<u>Id.</u> at 9.)  On June 18, 2013, Local 817 informed plaintiff that he would be permanently banned, effective immediately, from the union's referral list. (<u>Id.</u>)  In a June 18, 2013 letter to plaintiff, Francis Connolly, Jr., Secretary-Treasurer of Local 817, stated that plaintiff's "work record, littered with DUI's, has never been good.  However the incident in which you threatened to kill two members of Local 817 via a text message is intolerable and despite any extenuating circumstances, completely unacceptable." (<u>Id.</u>)

In his complaint and in various documents attached to the complaint, plaintiff denies that he sent the threatening text message at issue.  (<u>Id.</u> at 6, 11, 37, 38; ECF No. 2-1 at 32, 39.)

However, in other documents attached to the complaint, plaintiff admits that he sent this text message and attempts to explain his behavior as a consequence of the stress of caring for two ill parents along with the fact that plaintiff is an alcoholic.  (See ECF No. 2-1 at 21-23, 37-38.)  In a handwritten letter to Thomas O'Donnell ("O'Donnell"), President of Local 817, which was apparently drafted on June 18, 2013, plaintiff wrote: "[t]his text message was sent by an evil alcoholic with the same name as I."[3]  (Id. at 37 (emphasis added).)  The letter explains that plaintiff began an addiction treatment program on June 17, 2013, and states: "I have not heard back from you Tom on a suitable punishment, but if I may ask in fairness to my family and I that it be a 90 day suspension with the exception of working at the PNC Arts Center.  This is not an easy time for me and the [treatment program] is willing to be flexible with my recovery process."[4]  (Id. at 37–38.)

Plaintiff claims that, after he was banned from the referral list, he still continued to show up for work, but was told by Jim Whalen ("Whalen"), a Local 817 dispatcher, "[n]o license no work.  Go back to Canada."  (Id. at 39.)

As explained in plaintiff's June 18, 2013 letter, plaintiff began an outpatient addiction treatment program on June 17, 2013.  (Id. at 37.)  After completing the program on September 5, 2013, (id. at 19), plaintiff wrote another letter to O'Donnell, dated October 28, 2013, appealing his permanent ban from the referral list and seeking a lesser sanction.  (Id. at 27.)

---

[3] The date on the letter is cutoff and reads "June 18, 201".  (Id. at 37.)  However, based on the substance of this letter and another document provided by plaintiff to the Court, it is clear that this letter was written on June 18, 2013, prior to plaintiff's receipt of defendant's dismissal letter, but after plaintiff voluntarily entered treatment.  (See id.)

[4] Additionally, although not directly relevant to the question of whether or not plaintiff sent a threatening text on May 29, 2013, it should be noted that documents attached to the complaint also show that plaintiff sent a series of threatening text messages to members of Local 817's Board in October 2014.  (ECF No. 2 at 28-29.)  One such text message states, "[d]o you believe in god [b]ecause eventually you are going to meet him", and "[e]njoy these precise days with family because the end could be near."  (Id. at 28.)  Plaintiff denies threatening to kill any Board members, but appears to admit sending these texts, stating that "[m]y father past away on October 2, 2014" and that "[a]ll of these comments [w]ere in grief and remorse for my father."  (Id. at 37.)

Plaintiff claims that his ban from defendant's referral list constitutes discrimination based on his national origin, alienage, and criminal record. (ECF No. 2 at 6.) In support of these allegations, plaintiff contends that his permanent ban from defendant's referral list was discriminatory because he was held to a different standard than his colleagues. (ECF No. 2-1 at 43.) Specifically, plaintiff alleges that at least eight Local 817 union employees with histories of misconduct, including murder, assault, theft, DUIs, failed drug tests and other misdeeds were allowed to continue their employment with Local 817. (Id.) Plaintiff also claims that there are Local 817 employees "who have also had a difficult time in their lives," and that, unlike plaintiff, these unnamed employees were allowed to continue their work "after a suspended period of time." (Id. at 27.) Plaintiff maintains that his misconduct "was an isolated 'off duty conduct' and defendant was aware of the stress levels plaintiff was dealing with." (ECF No. 2 at 6.) Plaintiff also maintains that "other teamsters received better treatment when disciplined by defendant for 'on the job conduct.'" (Id.)

Plaintiff also alleges that on an unspecified date, Local 817 employee Timothy Shannon, Jr. attempted to hit plaintiff with his car while the two men were working on the set of a television show. (ECF No. 2-1 at 14.) Plaintiff complained to Local 817 about this incident in March 2014, approximately nine months after he was terminated from the referral list. (Id. at 15.) Plaintiff alleges that although Local 817 told him that they would investigate this incident, he never heard anything further from Local 817 about it. (Id.) In another incident on March 7, 2014, the same Local 817 employee allegedly tried to ram plaintiff's car with his SUV. (Id.) Plaintiff does not allege that he complained to Local 817 about this second incident. (Id.)

Plaintiff also alleges that numerous unidentified employees who "shap[ed]" up for work were able to become "Members" of Local 817 whereas he was "always passed by when it came to

handing out applications for membership." (ECF No. 2 at 39.) Plaintiff does not provide any further details about what membership entails or about the members discussed above.

Finally, construed liberally, plaintiff's complaint appears to allege that Local 817 violated the FMLA by terminating him in retaliation for taking FMLA leave in order to care for his ill parents. (Id. at 10, 37; ECF No. 2-1 at 21.)

## A. Procedural History

On June 29, 2015, plaintiff filed a complaint with the NYSDHR, which was dual filed with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that he was permanently banned from Local 817's referral list because of his national origin, arrest record and conviction record.[5] (ECF No. 2 at 10-12; Hancock Aff. Ex. A.) The NYSDHR issued an Order and Determination on November 20, 2015, finding "NO PROBABLE CAUSE" to believe that the respondent engaged in the unlawful discriminatory practice complained of "because his Complaint was untimely." (Hancock Aff. Ex. A.) On February 26, 2016, the EEOC issued a Right to Sue Letter advising plaintiff that the EEOC had dismissed his administrative charge and that he had 90 days to file suit. (ECF No. 2 at 4; Hancock Aff. Ex. B.)

On July 26, 2016, plaintiff filed the instant complaint in the United States District Court for the Southern District of New York—149 days after plaintiff received the EEOC's Right to Sue Letter. (ECF No. 2 at 4.) After plaintiff's suit was transferred to this Court, defendant moved to

---

[5] Plaintiff did not attach the NYSDHR's decision, or the EEOC's Right to Sue Letter to the instant complaint. Nevertheless, the Court may properly consider these documents in deciding the instant motion to dismiss. See Morris v. David Lerner Assocs., 680 F.Supp.2d 430, 436 (E.D.N.Y.2010) ("[W]ith respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the Court may consider such documents because they are public documents filed in state administrative proceedings, as well as because they are integral to plaintiff's claims.")

dismiss the complaint in its entirety for lack of subject matter jurisdiction and for failure to sate a claim.[6]

## II.    DISCUSSION

### A.  Standard Under Rule 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555.  In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).  Affirmative defenses, such as a time bar, are appropriately decided on a 12(b)(6) motion if it is clear from the face of the complaint that a limitations period has run.  Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014) (citing Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008)).  As noted earlier, when deciding a motion to dismiss, a court may consider materials attached to the complaint, materials integral to the complaint, and materials incorporated into the complaint by reference.  Sira, 380 F.3d at 67. Furthermore, the Court may take judicial notice of

---

[6] On August 24, 2017, plaintiff filed a motion for leave to file a sur-reply (ECF No. 18) which was denied by this Court on September 11, 2017.  However, in an abundance of caution, the Court will consider the contents of plaintiff's sur-reply in deciding the instant motion.  Thus, through plaintiff's opposition papers and his sur-reply he has had two opportunities to allege facts showing that he plausible federal claims.  As explained below, he has failed to allege any plausible federal claims.

public records, such as state court proceedings. Blue Tree Hotels Inv. (Canada), Ltd., 369 F.3d at 217.

While a court is required to read a plaintiff's pro se complaint liberally and interpret it as raising the strongest arguments it suggests, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

## B. Timeliness of the Title VII and ADEA Claims

In New York, a "dual filing" state, a plaintiff has 300 days from the date of the allegedly discriminatory act occurred to file a Title VII and ADEA charge with the EEOC or the NYSDHR. See 42 U.S.C. § 2000e–5(e) (Title VII); 29 U.S.C. §§ 626(d), 633(b) (ADEA); Jiles v. Rochester Genesee Regional Transp. Auth., 217 F. Supp.3d 688, 690-91 (W.D.N.Y. 2016).[7] "The statutory filing period operates as a statute of limitations; therefore, the failure to file an administrative complaint within the required time period will bar a plaintiff's action." Jiles, 217 F. Supp.3d at 691 (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996)); Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 325 (2d Cir. 1999) ("[D]iscriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court."). The purpose of this limitations period is to guarantee the protections of the civil rights laws to those who promptly assert their rights while protecting employers from the burden of defending claims that arose from employment decisions that are long past. Delaware State College v. Ricks, 449 U.S. 250, 256-57 (1980).

---

[7] The limitations period commences at the time the alleged discrimination decision is made and communicated to the plaintiff. Similan v. United Airlines, Inc., 796 F. Supp. 723, 726 (E.D.N.Y. 1992) (internal citation omitted).

Further, in order to pursue a Title VII or ADEA claim in federal court, a plaintiff must file his federal complaint within 90 days of receipt of his right to sue notice from the EEOC. See 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e); Dawes v. City University of New York, 193 F. App'x. 59, 60 (2d Cir. 2006) (citing Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994)).[8] When the action is not filed within 90 days, dismissal is appropriate. Dawes, 193 F. App'x at 61; see also Zerilli–Edelglass v. New York City Transit Auth., 333 F.3d 74, 78 (2d Cir. 2003) (affirming dismissal of complaint received by pro se office 92 days after receipt of right to sue notice).

Plaintiff's Title VII and ADEA claims are time-barred because, although the alleged discrimination occurred on June 18, 2013—the date he was permanently banned from defendant's referral list— plaintiff did not file a dual complaint with the NYSDHR and the EEOC until June 29, 2015, more than two years later. (Hancock Aff., Ex. A, ECF No. 12.) Similarly, plaintiff's Title VII and ADEA claims are also time barred because, after receiving his Right to Sue Letter on February 26, 2016, (ECF No. 2 at 4), plaintiff did not file the instant complaint until July 26, 2016, well beyond the 90-day limitations period. Plaintiff argues that the continuing violation doctrine and equitable tolling saves these time-barred claims; however, neither argument is persuasive.

Although a plaintiff must comply with the 300–day time limit to file a claim with the EEOC, an exception exists in cases of a continuing violation. See Gomes v. Avco Corp., 964 F.2d 1330, 1332–33 (2d Cir. 1992). A continuing violation "may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of

---

[8] "Unlike Title VII, the ADEA does not require that the claimant receive a right to sue letter prior to commencing an action in federal court. However, if the EEOC issues a right to sue letter, the claimant must commence an action within 90 days after its receipt." Walter v. Hamburg Cent. Sch. Dist., No. 04-CV-996S, 2007 WL 1480965, at *3 n. 3 (W.D.N.Y. May 18, 2007) (citing Holowecki v. Federal Express Corp., 440 F.3d 558, 563 (2d Cir. 2006)).

discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Cornwell, 23 F.3d at 704.[9]  However, where discrete acts of discrimination are alleged, "each discrete act starts a new clock for filing charges" and such allegations of discrimination are subject to the 300-day filing time limit.  Morgan, 536 U.S. at 102. Here, plaintiff fails to allege any facts demonstrating a discriminatory policy or practice—rather, plaintiff's claims stem from a discrete act, his one-time removal from defendant's referral list. Furthermore, though plaintiff requests that his federal claims be tolled, he fails to allege any facts to support the extraordinary remedy of equitable tolling.

The Court assumes that all of the relevant statutes of limitations at issue are subject to equitable tolling.  See Richards v. North Shore Long Island, No. 10-CV-4544, 2011 WL 6102055, *3 (E.D.N.Y. Dec. 6, 2011); Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir. 1989)); Zerilli-Edelglass, 333 F.3d at 80.  "Equitable tolling is generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time-period; where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant; or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion."  Zerilli-Edelglass, 333 F.3d at 80 (internal quotations and citations omitted).  "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  Id. at 80-

---

[9] Cornwell preceded the Supreme Court's decision in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), which narrowed the scope of the continuing violation doctrine. However, courts in this Circuit continue to cite to Cornwell and its progeny for the parameters of the continuing violation doctrine, reasoning that Morgan abrogated Cornwell on other grounds. Stamm v. New York City Transit Auth., No. 04-cv-2163-SLT-JMA, 2013 WL 244793, at *8 n.1 (E.D.N.Y. Jan. 22, 2013) (collecting cases).

81 (quoting <u>Chapman v. ChoiceCare Long Island Term Disability Plan</u>, 288 F.3d 506, 512 (2d Cir. 2002)).  Thus, "equitable tolling [of the 300–day statutory deadline] is only appropriate 'in rare and exceptional circumstances' . . . in which a party is 'prevented in some extraordinary way from exercising his rights.'"  <u>Id.</u> at 80 (internal citations omitted).  Importantly, "[p]ro se filings, although held to more lenient standards, are not excused from establishing these elements." <u>Arias-Mieses v. CSX Transp., Inc.</u>, 630 F. Supp. 2d 328, 332 (S.D.N.Y. 2009); <u>see also</u> <u>Doe v. Menefee</u>, 391 F.3d 147, 175 (2d Cir. 2004) (finding that "<u>pro se</u> status does not in itself constitute an extraordinary circumstance meriting tolling").

Plaintiff seeks equitable tolling (1) for the approximate ninety days in 2013 when he was being treated at an outpatient rehabilitation center; and, (2) more generally, because he is not represented by counsel.  (ECF. No. 18-1 at 4.)  Plaintiff, however, has not alleged any facts demonstrating either "reasonable diligence" or "extraordinary circumstances."  His outpatient treatment is not in and of itself an extraordinary circumstance.  The fact that plaintiff was able to "shap[e]" up for work while in outpatient treatment shows that this was not an extraordinary circumstance.  (ECF No. 2 at 38.)  Moreover, plaintiff's <u>pro se</u> status does not entitle him to equitable tolling of his claims.  <u>See</u> <u>Arias-Mieses</u>, 630 F. Supp. 2d at 332.  Thus, plaintiff's Title VII and ADEA claims are dismissed for untimeliness.

## C.  <u>Administrative Exhaustion of the ADEA Claim</u>

Plaintiff's ADEA claim must also be dismissed because plaintiff failed to exhaust his administrative remedies for that claim.  Although plaintiff dual filed complaints with the NYSDHR and the EEOC, those complaints do not mention age discrimination.  "Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." <u>Tanvir v. New York City</u>

Health & Hosps. Corp., 480 F. App'x 620, 621 (2d Cir. 2012).  However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." Shah v. New York State Dept. of Civil Serv., 168 F.3d 610, 614 (2d Cir. 1999).  "[A] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359–60 (2d Cir. 2001)).  In making this inquiry, "the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving," and "[t]he central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases." Id. (internal citation omitted).

Plaintiff's dual filed EEOC and NYSDHR complaints alleged discrimination "because of arrest record, conviction record, [and] national origin."  (Hancock Aff. Ex. A.)  Plaintiff, however, did not include any allegation of age discrimination in his dual filings.  Because the instant age discrimination claim is of a completely different nature from the national origin and criminal record discrimination claims specified in his administrative complaints, plaintiff's age discrimination claim is not "reasonably related" to those claims.  See e.g., Cherry v. New York City Housing Auth., No. 15-CV-6949, 2017 WL 4357344 at *11 (E.D.N.Y. Sept. 29, 2017); Hawkins v. Wegmans Food Mkt., 224 F. App'x 104, 105 (2d Cir. 2007); see also Littlejohn v. City of New York, 795 F.3d 297, 307, 321-24 (2d Cir. 2015).  Accordingly, plaintiff's ADEA claim

must also be dismissed for failure to exhaust.[10]

### D.  **Merits of Plaintiff's Title VII and Section 1981 Claims**

For plaintiff's Title VII's claim, he alleges that he was discriminated against on the basis of his national origin when he was permanently banned from defendant's referral list on June 13, 2013.  (ECF No. 2 at 6.)  Plaintiff also raises—for the first time in his opposition to defendant's motion to dismiss—a claim for alienage discrimination based on the referral list ban pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981(b) ("Section 1981").  (ECF No. 15 at 4-6.)

#### 1.  **Standard for Pleading Employment Discrimination Claims**

In analyzing whether a plaintiff has sufficiently alleged an employment discrimination claim, the Court looks to the Iqbal/Twombly pleading standard and the three-stage, burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Cherry, 2017 WL 4357344 at *6 (citing Doe v. Columbia Univ., 831 F.3d 46, 54–55 (2d Cir. 2016)).  At the pleading stage, however, a plaintiff does not need to prove discrimination, or even allege facts establishing every element of the McDonnell Douglas prima facie case—rather, the facts alleged must simply give 'plausible support to the reduced requirements' of the prima facie case.  Id. at 7 (quoting Littlejohn, 795 F.3d at 311).  "On a motion to dismiss, the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, i.e., whether plaintiffs allege enough to 'nudge[ ] their claims across the line from conceivable to plausible.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015) (quoting Twombly, 550 U.S. at 570)).

---

[10]  Not only is plaintiff's ADEA claim subject to dismissal on timeliness and exhaustion grounds, but this claim also fails on the merits.  Plaintiff does not allege any facts that plausibly suggest an inference of age discrimination.  Plaintiff does not allege any age-based comments or identify the ages of the allegedly similarly situated comparators.  The only allegations related to plaintiff's age merely indicate that he was born in 1961 and was therefore over the age of 40 at the time of the alleged discriminatory conduct.  (ECF No. 2 at 43.)

"Nevertheless, the elements of the prima facie case 'provide an outline of what is necessary to render a plaintiff's . . . claims for relief plausible.'" Bivens v. Inst. for Cmty. Living, Inc., No. 14-CV-7173, 2015 WL 1782290, at *7 (S.D.N.Y. Apr. 17, 2015) (quoting Kassman v. KPMG LLP, 925 F.Supp.2d 453, 461 (S.D.N.Y. 2013)) (internal quotation marks and alterations omitted).

To establish a *prima facie* case of discrimination based on national origin under Title VII, a plaintiff must show that "1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Muktadir v. Bevacco Inc., No. 12–CV–2184, 2013 WL 4095411, at *1 (E.D.N.Y. Aug. 13, 2013) (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)).

The facts alleged in the complaint must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn, 795 F.3d at 310-11. "[N]aked assertions of discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." Soloviev, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015) (citations omitted). "[C]ircumstances that give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, . . . [or] preferential treatment given to employees outside the protected class [ ] . . ." Haggood v. Rubin & Rothman, LLC, No. 14 Civ. 34, 2014 WL 6473527, at *9 (E.D.N.Y. Nov. 17, 2014) (quoting Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996)).

Section 1981 prohibits both public and private actors from discriminating on the basis of race or alienage in the making and enforcement of contracts, including employment contracts. See Anderson v. Conboy, 156 F.3d 167, 170-80 (2d Cir. 1998). Alienage discrimination is

discrimination on the basis of citizenship.  <u>See</u>, <u>e.g.</u>, <u>id.</u> at 171 (observing that Section 1981's "juxtaposition of 'persons' and 'citizens' suggests that it prohibits alienage discrimination"); <u>see also</u> 8 U.S.C. § 1101(a)(3) (defining "alien" as "any person not a citizen or national of the United States").  "Alienage discrimination is distinct from both national-origin and birthplace discrimination."  <u>Anderson</u>, 156 F.3d at 171 n. 5.

Claims under Section 1981 are analyzed under the same <u>McDonnell Douglas</u> burden-shifting framework and the same pleading standards as Title VII claims.[11]  <u>See Martin v. Citibank, N.A.</u>, 762 F.2d 212, 216–17 (2d Cir. 1985); <u>Maack v. Wyckoff Heights Medical Center</u>, No. 15-CV-3951, 2016 WL 3509338 at 15 n. 22 (S.D.N.Y. June 21, 2016) (noting that the pleading standards set forth in <u>Vega</u> and <u>Littlejohn</u>, which are both Title VII cases, "apply with equal force" to claims under Section 1981).  This is because "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981."  <u>Patterson v. Cnty. of Oneida</u>, 375 F.3d 206, 225 (2d Cir. 2004).  To state a <u>prima facie</u> claim under section 1981, a plaintiff must show that (1) he is a member of a protected class, (2) defendant intentionally discriminated against him on the basis of his membership in that protected class, and (3) the discrimination concerned one of the statute's enumerated activities.  <u>See also Juarez v. Northwestern Mut. Life. Ins. Co., Inc.</u>, 69 F. Supp. 3d 364, 367 (S.D.N.Y. 2014) (citing <u>Brown v. City of Oneonta</u>, 221 F.3d 329, 339 (2d Cir. 2000)).

---

[11] Unlike Title VII claims, discrimination claims under Section 1981 are governed by the general four-year statute of limitations found in 28 U.S.C. § 1658.  <u>Jones v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369, 383 (2004).  Accordingly, plaintiff's §1981 claims are timely.

### 2. Analysis

Plaintiff attempts to raise an inference of national origin and alienage discrimination by relying on: (1) alleged comparators who engaged in purportedly similar misconduct but were not terminated from the referral list; and (2) a single comment made about plaintiff's Canadian citizenship. As explained below, none of plaintiff's allegations give rise to a plausible inference of national origin or alienage discrimination.

The Court will first address the alleged discriminatory comment. Plaintiff claims that after he was terminated from the referral list, he nevertheless continued to "shap[e]" up for work at Local 817. (ECF No. 2 at 38.) When he did, Whalen, a Local 817 dispatcher told him "[n]o license no work. Go back to Canada." (Id. at 39.) Plaintiff does not allege that Whalen was a decision-maker in plaintiff's termination from the referral list.

In determining whether a challenged remark is probative of discriminatory intent, courts consider the following four factors: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i .e., whether it was related to the decision-making process)." Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010). However, none of those factors are dispositive. Id. at 150.

"Courts have routinely held that stray remarks by non-decision makers are insufficient, without other evidence, to raise an inference of discrimination." Brown v. Cnty. of Erie, No. 12–CV–251, 2013 WL 885993, at *7 (W.D.N.Y. Mar. 8, 2013) (internal quotations omitted); see also Soloviev, 104 F. Supp. 3d at 249 (granting motion to dismiss and finding that "three specific phrases lobbed at [plaintiff] which seem to be discriminatory on the basis of his national origin

were insufficient" because, <u>inter alia</u>, plaintiff "fail[ed] to allege that any of the named [individual defendants] or anyone with control over the decision to fire [plaintiff] made those comments").

Courts must also consider the context in which the remark was made and "whether it was related to the decision-making process." <u>See</u> <u>Henry</u>, 616 F.3d at 149. Where remarks are unrelated to a decision taken with respect to a plaintiff, they may not be probative of discriminatory intent. <u>Sethi</u>, 12 F. Supp. 3d at 541 (finding stray remark made after employment terms were determined not probative of discrimination); see <u>Del Franco v. New York City Off-Track Betting Corp.</u>, 429 F.Supp.2d 529, 536-37 (E.D.N.Y. 2006) (finding that discriminatory remarks were "insufficient evidence from which discriminatory animus can be inferred" because, among other things, the alleged remarks were unrelated to the defendant's decision to discharge the plaintiff).

In the instant case, the only allegation referencing plaintiff's national origin was a single comment—"[n]o license no work. Go back to Canada"—allegedly made by a Local 817 dispatcher after the allegedly discriminatory conduct. (ECF No. 2 at 39.) Considering the above referenced factors, Whalen's alleged remark does not give rise to a plausible inference of national origin or alienage discrimination. Significantly, Whalen is not alleged to have been a decision-maker in plaintiff's termination from the referral list, which occurred prior to the alleged remark being made. Thus, the Court concludes that the alleged comment by Whelan is insufficient to raise a plausible inference of discrimination. Moreover, plaintiff's claims of national origin and alienage discrimination are undermined by the documents attached to the complaint in which he admits to sending the threatening text at issue.[12]

---

[12] Even if the Court disregarded this admission, the comment by Whalen, along with plaintiff's other evidence of alleged discrimination, are insufficient to raise a plausible inference of national origin or alienage discrimination. Thus, even if it is assumed that plaintiff did not send the threatening text at issue, he has not alleged sufficient facts to plausibly allege an inference of discrimination in connection with his termination from the referral list.

Plaintiff also argues that he was treated less favorably than similarly situated employees outside his protected group and that this raises a plausible inference of discrimination. (Id. at 6, 7.) Disparate treatment "'is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case,' and 'requires the plaintiff to show that the employer treated . . . her less favorably than a similarly situated employee outside of the protected group.'" Dooley v. JetBlue Airways Corp., 636 F. App'x 16, 20 (2d Cir. 2015) (quoting Raspardo v. Carlone, 770 F.3d 97, 126 (2d Cir. 2014)). The plaintiff must demonstrate "that the employer treated plaintiff less favorab[ly] than a similarly situated employee outside his protected group but who is similar in all material respects to the individual whom he seeks to compare himself with." Soloviev, 104 F. Supp. 3d at 248-49 (internal citations omitted) (dismissing Title VII and NYSHRL discrimination claims where "[p]laintiff's complaint [was] devoid of allegations regarding [ ] similarly situated employees' supervisors, job specifics, job performance, or conduct."); Haggood, 2014 WL 6473527, at *11 ("[W]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated, remains an essential component of such a claim and conclusory allegations of selective treatment are insufficient."); Harrison v. SUNY Downstate Medical Center, 2017 WL 4326507 at *5 (Sept. 25, 2017 E.D.N.Y.) ("[H]aving failed to allege that similarly situated employees outside of her protected class received preferential treatment, [plaintiff] has failed to raise an inference of discriminatory intent.")

Plaintiff's complaint is devoid of factual allegations that he was treated differently than "similarly situated employee[s] outside his protected group" who are "similar in all material respects." Soloviev, 104 F. Supp. 3d at 248-49. Instead, he merely alleges, "[t]here are others who I must subpoena to court to prove they have been given better treatment than I in accords with Local 817 disciplinary actions." (ECF No. 2-1 at 43.) He then identifies eight current Local 817

18

employees by name, and alleges their participation in drinking, failed drug screenings, assault and other misdeeds.  (Id.)  For example, plaintiff alleges that Teamster Robert Scanlon allegedly "failed two drug screenings while operating [a] truck on [the] job," and that Tom Weisler was involved in unspecified "Verbal Threatening Remarks."   (Id.)   None of these actions are comparable to plaintiff's threat to kill another Teamster.  See Dooley, 636 F. App'x at 20 ("In the context of employee discipline, . . .  the plaintiff and the similarly situated employee must have engaged in comparable conduct, that is, conduct of comparable seriousness.'" (quoting Raspardo, 770 F.3d at 126)); Shaw v. McDonald, No. 14-CV-5856, 2015 WL 8484570, at *5 (S.D.N.Y. Dec. 8, 2015), aff'd, 715 F. App'x 60 (2d Cir. 2018) (dismissing discrimination claim where although plaintiff alleged that another employee "was also accused of verbally abusing a patient, but was not disciplined," plaintiff failed to "provide facts that could demonstrate to the Court that [the other employee] was similarly situated, that he engaged in similar behavior, or that [the other employee] was outside his protected class (i.e., not a Muslim)").

Plaintiff also alleges that Local 817 allowed Kenneth Shannon, "a convicted killer" to work.  (ECF No. 2-1 at 43.)  Plaintiff, however, does not allege what Kenneth Shannon was convicted of, when he was convicted, or any connection between Kenneth Shannon's crime and his employment—whereas plaintiff was terminated from the referral list for threatening to kill another Teamster.  (ECF No. 2 at 21.)

 Plaintiff also alleges that another Teamster, Timothy Shannon Jr., attempted to hit plaintiff with his car on two occasions.  (ECF No. 2-1 at 14.)  These incidents are also not comparable to plaintiff's alleged misconduct.  Notably, plaintiff only reported one of these incidents to Local 817 and did so nine months after he was terminated from the referral list.  The fact that this report came

from a disgruntled individual who had previously been terminated from the referral list is ample

reason to distinguish it from plaintiff's own misconduct involving the May 29, 2013 text.[13]

Similarly, plaintiff's allegations that he was never offered membership in Local 817

whereas unspecified individuals were, is also insufficient to raise a plausible inference of

discrimination.

Furthermore, plaintiff does not identify the national origin or alienage of any of the alleged

comparators discussed above.  See Maack, 2016 WL 3509338 at *15 (dismissing alienage claim

under section 1981 where plaintiff failed to identify the citizenship status of her supervisor or of

any of her colleagues who allegedly received favorable or less favorable treatment).   He merely

alleges that "[c]omplainant feels that Canadians are also banned from shaping on Local 817 hiring

hall referral list."  (ECF No. 2 at 38.)  In light of the above, plaintiff has failed to plausibly allege

an inference of national origin or alienage discrimination.  Accordingly, plaintiff's Title VII and

Section 1981 claims are dismissed.

**E.  Family Medical Leave Act Retaliation Claim**

While plaintiff's complaint does not mention the Family Medical Leave Act ("FMLA"),

29 U.S.C. § 2601 et. seq., a liberal construction of plaintiff's pleading suggests that plaintiff alleges

that he was banned from defendant's referral list in retaliation for taking time off to care for his ill

parents in violation of the FMLA.[14] (ECF No. 2 at 10, 37; ECF No.2-1 at 21; ECF No. 15 at 8-9.)

---

[13] As noted earlier, in plaintiff's June 18, 2013 letter, he admitted to sending the threatening text at issue.  (ECF No. 2-1 at 37-38.)  The Court also notes that the timing of that letter and plaintiff's admission into outpatient treatment shortly after the alleged threat all indicate that plaintiff sent the threatening text on May 29, 2013 and that the fallout from the threatening text is what led him to enter outpatient treatment.  "Rather than show discriminatory intent, the sequence of events leading to [plaintiff's] discharge indicates that his termination was the product of his actions rather than his  . . . national origin" or Canadian citizenship.  Soloviev, 104 F. Supp.3d at 250.

[14] Plaintiff specifically alleges retaliation under 42 U.S.C. § 1981.  However, Section 1981 only provides a cause of action for individuals who are retaliated against for complaining about race or alienage discrimination, and plaintiff did not make any such complaints prior to his termination from the referral list.  See Fouche v. St. Charles Hospital, 64 F. Supp.3d 452, 457 (E.D.N.Y. 2014).

20

The FMLA makes it unlawful for an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). "Courts recognize two distinct types of cognizable claims under the FMLA: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." Krosmico v. JP Morgan Chase & Co., No. 06-CV-1178, 2006 WL 3050869, at *2 (E.D.N.Y. Oct. 19, 2006) (citing Potenza v. City of New York, 365 F.3d 165, 167 (2d Cir. 2004)).

However, an FMLA action may be brought no later than two years after the date of the last event constituting the alleged violation for which the action is brought.  Krosmico, 2006 WL 3050869 at *2 (citing 29 U.S.C. § 2617(c)(1)). If the case is brought for a willful violation of the FMLA, the statute of limitations expands to three years.  Smith v. Westchester Cnty., 769 F. Supp. 2d 448, 463 (S.D.N.Y. 2011) (citing 29 U.S.C. § 2617(c)(2)).

Here, the alleged retaliation occurred on June 18, 2013 when plaintiff was permanently banned from defendant's referral list.  (ECF No. 2 at 21.)  As plaintiff did not file his complaint until July 26, 2016, his retaliation claim is time-barred, even under the benefit of the three-year limitations period.  Moreover, as explained above, plaintiff has not shown that he is entitled to equitable tolling.  Furthermore, plaintiff has not plausibly alleged that he was retaliated against for taking FMLA leave.  Accordingly, plaintiff's FMLA retaliation claim is dismissed.

## F.  **Plaintiff's State Law Claims**

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); see Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d. Cir. 2011). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Here, given the absence of any viably pled federal claims, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction at this time. Accordingly, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

Although exercising supplemental jurisdiction is inappropriate, the Court would be compelled to exercise jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1332 if there is "diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000." 28 U.S.C. § 1332. In order to establish diversity of citizenship, plaintiff and defendant must be citizens of different states. Plaintiff, as the party asserting jurisdiction, bears the burden of proving that the Court has subject matter jurisdiction over his state law claims. See Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010); DiTolla v. Doral Dental IPA of N.Y., 469 F.3d 271, 275 (2d Cir. 2006).

Plaintiff appears to be a citizen of New Jersey. (ECF No. 2 at 4.). However, for diversity purposes, labor unions such as Local 817, are not citizens at all, thus requiring a court to look to the citizenship of each member of the union. See United Food & Commercial Workers Union Local 919 v. CenterMark Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994) ("the

citizenship of an unincorporated association, such as a labor organization, is determined by the citizenship of each of its members"). If any member of Local 817 is a citizen of New Jersey, then diversity of citizenship would be lacking and the Court would be compelled to dismiss plaintiff's state law claims without prejudice for lack of jurisdiction. Accordingly, plaintiff is ORDERED TO SHOW CAUSE, in writing, by October 31, 2018, why plaintiff's state law claims should not be dismissed for lack of subject matter jurisdiction. Plaintiff's response must identify each member of Local 817 and sufficient facts to draw a conclusion as to each member's citizenship. If plaintiff fails to respond by October 31, 2018, his state law claims will be dismissed without prejudice.

## III.   CONCLUSION

For the reasons set forth above, the Court grants defendant's motion as to plaintiff's federal claims and dismisses those claims. As explained above, Plaintiff is ORDERED TO SHOW CAUSE, in writing, by October 31, 2018, why plaintiff's state law claims should not be dismissed for lack of subject matter jurisdiction. Plaintiff's response must include an identification of each member of Local 817 and sufficient facts to draw a conclusion as to each member's citizenship.

The Clerk of the Court is directed to send a copy of this Order to the pro se plaintiff.

**SO ORDERED.**

Dated:  September 30, 2018
Central Islip, New York

_____/s/ (JMA)_____
Joan M. Azrack
United States District Judge

23