UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN STEVEN HOLLINGSWORTH,

                Plaintiff,

      -against-

THEATRICAL TEAMSTERS UNION
LOCAL 817 IBT,

                Defendant.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
16-CV-4700 (JMA)(AYS)

**APPEARANCES:**

John Steven Hollingsworth
    *Pro se Plaintiff*

Lawrence M. Goodman
Ryan Allen Hancock
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
    *Attorneys for Defendant*

FILED
CLERK
5/7/2020 4:26 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

    Currently pending before the Court are motions filed by *pro se* plaintiff John Steven Hollingsworth ("Plaintiff") seeking reconsideration of the Court's September 30, 2018 Memorandum and Order (the "2018 Order," ECF No. 19) and seeking to amend the complaint. Additionally, before the Court is Plaintiff's submission in response to the Court's Order to Show Cause why Plaintiff's state law claims should not be dismissed for lack of subject matter jurisdiction. For the reasons that follow, Plaintiff's motions for reconsideration and to amend the complaint are denied and Plaintiff's state law claims are dismissed without prejudice.

1

## I. BACKGROUND

The Court assumes familiarity with the facts of this case, which are detailed in the Court's 2018 Order that granted the motion to dismiss filed by defendant Theatrical Teamsters Union Local 817 IBT ("Local 817" or "Defendant"). The following is a brief summary of those facts relevant to the disposition of the present motions.

Plaintiff, a Canadian citizen, was on Local 817's referral list from 1996 until he was permanently banned from work on June 18, 2013. (2018 Order at 3.) Following a hearing before Local 817's Executive Board on June 12, 2013, Plaintiff was notified in a letter dated June 18, 2013 that he was permanently banned from the Defendant's referral list. (Id.) The letter informed Plaintiff that he was banned from the referral list for threatening to kill two members of Local 817 on May 29, 2013 via a text message. (Id.)

Plaintiff alleges that he was under great stress during the time leading up to his permanent ban as he was caring for two ill parents and, admittedly, was an alcoholic. (Id. at 3-4.) One day before Plaintiff's permanent ban took effect, on June 17, 2013, Plaintiff voluntarily entered a 90-day out-patient rehabilitation program. (Id. at 4.)

On June 29, 2015, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC") alleging that he was permanently banned from Local 817's referral list because of his national origin, arrest record, and conviction record. (Id. at 6.) According to the NYSDHR's order, dated November 20, 2015, there was no probable cause for Plaintiff's claims because his complaint with the NYSDHR was untimely. (Id.) On February 26, 2016, the EEOC issued a right-to-sue letter advising Plaintiff that the EEOC had dismissed his administrative charge and that he had 90-days to file suit. (Id.)

Five months later, on July 26, 2016, Plaintiff filed a complaint alleging: (1) discrimination claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"), the New York Human Rights Law ("NYHRL"), and the New York City Human Rights Law ("NYCHRL"); (2) retaliation claims pursuant to the Family Medical Leave Act ("FMLA"); and (3) state law claims for negligence, defamation, slander, and intentional infliction of emotional distress.  (Id. at 1, 6.)

By Memorandum and Order dated September 30, 2018, this Court dismissed Plaintiff's federal claims for failure to state a claim and ordered Plaintiff to show cause by October 31, 2018, why Plaintiff's state law claims should not be dismissed for lack of subject matter jurisdiction.  On October 30, 2018, Plaintiff filed a letter response to the Court's Order to Show Cause which also appears to seek reconsideration of the Court's dismissal of Plaintiff's federal claims.  (Letter Response, Oct. 30, 2018 ("Letter Response"), ECF No. 20.)  Plaintiff filed a supplemental letter response on February 25, 2019 (Supplemental Letter Response, Feb. 25, 2019 ("Supp. Letter Response"), ECF No. 21), and on March 21, 2019, Plaintiff filed a letter motion asking the Court to reinstate his Section 1981 claim.  (Letter Motion for Reconsideration, March 21, 2019 ("Letter Motion"), ECF No. 22.)  Defendant has not responded to Plaintiff's letters or motion.

In these letters, Plaintiff makes many of the same arguments he previously made in his opposition to Defendant's motion to dismiss the complaint.  (Compare Letter Response and Letter Motion with Pl. Opp. Mem. of Law, ECF No. 15.)  However, his three recent filings do also include a few additional factual allegations that were not raised in his complaint or in his opposition to Defendant's motion to dismiss.  Specifically, whereas in his earlier filings Plaintiff appeared to both admit and deny sending the threatening text message, (see 2018 Order at 3-4), he now insists

that he did not send the threatening text message, which he claims was sent by his ex-wife. (Letter Response at 13.) Additionally, where he was silent before, Plaintiff now claims that no other Canadian citizens were shaping for work in Spring 2013. (Id. at 2.) And, though his earlier filings alleged that he continued to show up for work in 2013 after he received the June 18, 2013 termination letter, (see 2018 Order at 4), he now claims that, after being banned in June 2013, he did not shape up for work again until September 2014. (Letter Response at 2.) Finally, Plaintiff now alleges that Jim Whalen ("Whalen"), Frank Connolly and Thomas O'Donnell are Local 817 decision makers and are from New York, though he admits that other members of Local 817 are residents of New Jersey. (Id. at 1.)

Plaintiff's three recent filings go beyond the discrete issue that the Court asked Plaintiff to address concerning the citizenship of Local 817's members. However, in an abundance of caution, the Court has construed these filings as motions for reconsideration and—to the extent they raise new factual allegations—to amend his complaint.

For the reasons that follow, Plaintiff's motions for reconsideration and to amend his complaint are denied and his state law claims are dismissed without prejudice. To the extent that Plaintiff's recent submissions repeat the same arguments that Plaintiff previously advanced, the Court finds no basis to reconsider its earlier decision to reject those arguments. And, as explained below, none of Plaintiff's new factual allegations are sufficient to allege plausible claims.

## II. DISCUSSION

### A. Standard of Review

Motions for reconsideration may be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Rule 6.3. See Wilson v. Pessah, No. 05-CV-3143, 2007 WL 812999, at *2 (E.D.N.Y. Mar. 14, 2007). The decision to grant or deny a motion for

reconsideration "is within the sound discretion of the district court . . . and is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Mangino v. Inc. Vill. of Patchogue, 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011) (internal citations and quotation marks omitted).  Generally, a motion for reconsideration will be "denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  It is "well-settled" that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.' " Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted).  "The major grounds justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Webb v. City of New York, No. 08-CV-5145, 2011 WL 5825690, at *1 (E.D.N.Y. Nov. 17, 2011) (internal quotation marks and citation omitted); see Shrader, 70 F.3d at 257.

Additionally, pursuant to Federal Rule of Civil Procedure 15(a), "a party may amend [its] pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).  Courts consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227 (1962)).  A motion to amend will be denied as futile if the amended complaint fails to allege a

5

plausible claim. See Chukwueze v. NYCERS, No. 10-CV-8133, 2013 WL 5878174, at *1 (S.D.N.Y. Nov. 1, 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

### B. Title VII, ADEA, and FMLA Claims are Time-Barred

Plaintiff's Title VII, ADEA, and FMLA claims were dismissed because they are all time-barred. Though Plaintiff does not contest that his claims were filed beyond the statute of limitations,[1] Plaintiff asserts, as he did in his opposition to Defendant's motion to dismiss, that his claims are subject to equitable tolling.

For the reasons set forth in the Court's prior Order, and as discussed below, the motion for reconsideration of the Title VII, ADEA, and FMLA claims is denied.[2]

To review, a plaintiff asserting claims under Title VII and the ADEA must file a complaint with the EEOC or the NYSDHR within 300-days of the complained-of act. 42 U.S.C. § 2000e–5(e)(1). Additionally, a plaintiff must file his complaint in court within 90-days of receipt of his right to sue notice from the EEOC. 42 U.S.C. § 2000e-5(f)(1). As the Court stated in its prior Memorandum and Order, Plaintiff's Title VII and ADEA claims are time-barred because Plaintiff failed to meet the statutory deadlines for complying with either of these requirements.

---

[1] Plaintiff appears to argue that because he filed a New York state court action within 90-days of receiving his right to sue letter, this tolled the limitations period for him to file his claims in this Court. Specifically, Plaintiff claims that his "right to sue letter was initially filed in New York Supreme Court in Richmond, New York. It was filed and submitted on March 1, 2016. Well before the 90-day deadline." (Letter Response at 2.) According to the New York State Supreme Court docket, Plaintiff's state court action was disposed of on April 1, 2016. See Hollingsworth v. Theatrical Teamsters, Index No. 0080017/2016 (N.Y. Sup. Ct., Richmond Cty.) Therefore, as Plaintiff did not file the instant action until July 26, 2016—more than 90-days after the state action ended—even if the limitations period was tolled while the state action was ongoing, Plaintiff's claims are still untimely. Moreover, even if Plaintiff could satisfy the 90-day deadline for filing his claims in court, as discussed more fully below, Plaintiff admittedly failed to comply with the 300-day administrative requirement and therefore his claims are time-barred for that reason as well.

[2] Plaintiff's motion also states that "this has been an ongoing continual violation." (Id. at 2.) However, this statement was made in reference to the fact that Plaintiff spoke with the President of Local 817, Thomas O'Donnell, in June 2018, and informed him that he "still wants his job back with damages." (Id.) This statement has no relevance to the continuing violation doctrine that this Court found inapplicable in its prior Order, as Plaintiff still fails to allege any facts demonstrating the requisite discriminatory policy or practice. (See 2018 Order at 9-10.)

Similarly, as the Court found in its prior Order, any FMLA claim alleged by Plaintiff is also time-barred.  (See 2018 Order at 20.)  A plaintiff must file a claim under the FMLA no later than two years after the employer's alleged violation.  29 U.S.C. § 2617(c)(1).  Where a plaintiff alleges that the employer's violation was willful, this limitations period is extended to three years.  29 U.S.C. § 2617(c)(2).  Here, the alleged retaliation occurred on June 18, 2013, the date that Plaintiff was permanently banned from Defendant's referral list.  Plaintiff did not file his complaint until July 26, 2016—more than three years after the alleged retaliation.  Thus, even with the benefit of the three-year limitations period applicable to willful violations, any FMLA claim by Plaintiff is time-barred.

Plaintiff argues that the relevant limitations periods for these claims should be tolled for the period during which he was enrolled in out-patient rehabilitation—this began on June 17, 2013 and ended on September 5, 2013.  (See Letter Response at 1-2.)  He also now contends that the limitations period should be tolled because he was also caring for his ill parents during the time he was in out-patient treatment.  (Id.)  Plaintiff argues that he "was under extreme stress and circumstances [c]aring for [his] mother and father while completing [his] [r]ehabilitation at the Endeavor House."  (Id. at 1.)

"[E]quitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights."  Zerilli–Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks, citations and alterations omitted).  "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  Id. at

80–81 (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)).

In his new filings, Plaintiff does not allege any additional facts that demonstrate either "reasonable diligence" or "extraordinary circumstances" to support the extraordinary remedy of equitable tolling.  Instead, Plaintiff claims, as he did in his opposition to Defendant's motion to dismiss, that the limitations periods should be tolled because of his enrollment in an out-patient rehabilitation program from June 17, 2013 to September 5, 2013 and because during this time he was also caring for his ill parents.  (Letter Response at 2.)  Neither Plaintiff's 90-day admittance to an out-patient rehabilitation program in the summer of 2013, nor his caring for his ill parents are extraordinary circumstances.

Even assuming, for the sake of argument, that Plaintiff's admittance in an out-patient treatment program constitutes an "extraordinary circumstance," he cannot demonstrate that he acted with "reasonable diligence."  "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."  Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000).  See also Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011) ("To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances.  He must further demonstrate that those circumstances caused him to miss the original filing deadline.")  Plaintiff was only in out-patient treatment from June 17, 2013 to September 5, 2013, yet he did not file a complaint with the EEOC and the NYSDHR until June 29, 2015, over a year-and-a-half after his alleged "extraordinary circumstance" ended.  Thus, even if Plaintiff's 90-day treatment period constituted an extraordinary circumstance, these claims

8

would still be untimely as he failed to act with reasonable diligence once his treatment ended. Plaintiff's argument for equitable tolling concerning any FMLA claim is similarly meritless. Additionally, given that Plaintiff was able to file his administrative complaints with the EEOC and the NYSDHR in June 2015, Plaintiff cannot claim that extraordinary circumstances prevented him from filing an FMLA claim in court by June 18, 2016. Plaintiff is not entitled to equitable tolling based on his out-patient treatment.

Finally, Plaintiff's latest contention that his claims should be subject to equitable tolling because he was caring for his ill parents also fails. Personal issues, including difficult family circumstances or the illness or death of a loved one, "do not present the extraordinary circumstances necessary to invoke the rare and exceptional doctrine of equitable tolling where there is no reason to believe that Plaintiff was prevented from proceeding." Rock v. Mustich, No. 08-CV-4976, 2009 WL 2391776, at *2 (S.D.N.Y. Aug. 3, 2009); Jenkins v. Potter, 271 F. Supp. 2d 557, 564 (S.D.N.Y. 2003) (holding union representative's "wife's terminal illness" not sufficiently "extraordinary" circumstance to justify equitable tolling); Gager v. Principi, 300 Fed. App'x 30, 31 (2d Cir. 2008) (summary order) (rejecting a *pro se* plaintiff's claim that she was entitled to equitable tolling on her Title VII complaint and reasoning that "[a]lthough [the plaintiff] contends that she lost track of time and dates due to deaths in her family and her father's illness, these circumstances are insufficient to warrant equitable tolling because she did not act diligently during the ninety-day period"). Therefore, as Plaintiff's claims are untimely and he has not alleged any facts demonstrating that he was "prevented from proceeding" with his claims, Plaintiff's motion seeking reconsideration of the dismissal of his Title VII, ADEA, and FMLA claims is denied.

### C. Section 1981 Claim

In his opposition to Defendant's motion to dismiss, Plaintiff attempted to allege a plausible inference of discrimination by relying on a single comment made by a dispatcher about Plaintiff's Canadian citizenship, and on alleged comparators who purportedly also engaged in misconduct but were not terminated from Defendant's referral list. Plaintiff's Section 1981 claim was dismissed by this Court's 2018 Order finding that none of his allegations gave rise to a plausible inference of alienage discrimination.[3]

In his instant motion, Plaintiff now claims that the dispatcher who made the alleged discriminatory comment about his ethnicity was also a decision maker. Additionally, Plaintiff now claims that he was the only Canadian shaping for work in Spring 2013. As discussed below, even considering all of Plaintiff's new allegations, Plaintiff has still not plausibly alleged an inference of discrimination. Therefore, reconsideration is denied.

1. Alleged Comment

Plaintiff's complaint alleged that after he was banned from Local 817's referral list, he shaped up for work, and Whalen, a Local 817 dispatcher, told him "[n]o license no work. Go back to Canada." (2018 Order at 17.) The Court considered this comment and determined that the comment was a stray remark made by a non-decision maker, which, given all of the circumstances, did not plausibly suggest that Local 817's decision to ban Plaintiff was discriminatory.[4] (Id. at 16-17.)

---

[3] Additionally, the Court found that even if Plaintiff's national origin discrimination claim under Title VII had been timely, it still failed under Federal Rule 12(b)(6) for the same reasons that his Section 1981 claim failed. See Martin v. Citibank, N.A., 762 F.2d 212, 216-17 (2d Cir. 1985) (noting that the pleading standards for Title VII and Section 1981 claims are the same).

[4] In determining whether a challenged remark is probative of discriminatory intent, courts consider the following four factors: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable

10

Though Plaintiff now alleges, in conclusory fashion, that Whalen was a decision maker, Plaintiff does not point to any factual allegations that render this conclusory assertion plausible. Plaintiff does not claim that Whalen was a member of the Executive Board that decided to permanently ban him from Defendant's referral list, or that Whalen had any control or input into that decision. Instead, Plaintiff merely claims that he was assigned work by Whalen. (See Letter Response at 2.) ("Jim Whalen is a decision maker at Local 817. He was in charge of handing out work. He also received phone calls for venues needing Local 817 Teamsters to load and unload trailers of equipment for shows and other theatrical events.") There is, however, nothing in Plaintiff's numerous filings which indicates that Whalen played any role in Local 817's decision to ban Plaintiff.

Courts in the Second Circuit have routinely held that comments made by someone without a direct role in the termination decision are not probative of an intent to discriminate. See e.g., Abdu–Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001) ("the stray remarks of a decisionmaker, without more, cannot prove a claim of employment discrimination") (quoting Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir. 998)); Luka v. Bard College, 263 F. Supp 3d 478, 487 (S.D.N.Y. 2017) (finding comments made by plaintiff's supervisor to be "stray remarks not suggestive of discriminatory intent by those in a position to decide plaintiff's tenure application").

Additionally, Plaintiff's recent filings clarify that after Plaintiff was banned from Defendant's referral list, he did not shape up for work again until September 2014—thus, Whalen's alleged comment was made more than one year after Plaintiff was terminated. (See Letter Response at 1.) This fact only strengthens the Court's conclusion that Whalen's comment is

---

juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." Henry v. Wyeth Pharm., Inc., 616 F,3d 134, 149 (2d Cir. 2010).

insufficient to plausibly allege that Plaintiff was discriminated against because of his Canadian citizenship.[5]  "Stray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision."  Campbell v. Alliance Nat'l Inc., 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) (citation omitted); see also De La Peña v. Metro. Life Ins. Co., 953 F. Supp. 2d 393, 413 (E.D.N.Y. 2013) (dismissing a Title VII claim where an allegedly discriminatory comment was "far removed in time" and "tangential . . . to the Plaintiff's ultimate discharge"), aff'd, 552 Fed. App'x. 98 (2d Cir. 2014) (citation omitted).

Therefore, the Court finds that despite Plaintiff's conclusory allegation that Whalen was a decisionmaker in his termination, Whalen's single comment made one year after Plaintiff's permanent ban from Defendant's referral list, was a stray remark unrelated to Plaintiff's termination, and therefore is insufficient to raise a plausible inference of discrimination.

2.  Disparate Treatment

To survive a motion to dismiss, "well-pleaded factual allegations [must] plausibly give rise to an inference of unlawful discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015) (emphasis in original).  Disparate treatment is a recognized method of raising an inference of discrimination for purposes of making out a *prima face* case, and requires that the plaintiff ultimately demonstrate that defendant "treated plaintiff less favorably than a similarly situated employee outside his protected group but who is similar in all material respects to the

---

[5] Plaintiff's allegations concerning Whalen's conduct during the spring of 2013 do not support a claim that Plaintiff was discriminated against because he was Canadian.  Plaintiff claims that, after he "missed a lot of time from work" and asked for an additional two weeks vacation to move his ill parents, Whalen "was not happy" and "furious" when Plaintiff spoke to him over the phone on May 7, 2013 about his vacation request.  (Letter Response at 2–3.)  Plaintiff also alleges that: "[O]n May 29, 2013, both Jim Whalen and Frank Connolly harassed me for taking too much time off of work.  And threatened to fire me on the spot."  (Id. at 3.)  If anything, these allegations show that Whalen and others at the Union were unhappy with Plaintiff for other reasons unrelated to his Canadian citizenship.

12

individual whom he seeks to compare himself with." Soloviev v. Goldstein, 104 F. Supp. 3d 232, 248-49 (E.D.N.Y. 2015) (citation omitted). An employee is similarly situated to other employees if they were (1) "subject to the same performance evaluation and discipline standards" and (2) "engaged in comparable conduct." Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000).

In opposition to Defendant's motion to dismiss, Plaintiff named eight employees of Local 817 that were "given better treatment than [him] in accords with Local 817 disciplinary actions." (2018 Order at 18-19.) These employees were allegedly involved in failed drug screenings, verbal assault, theft, driving under the influence, and a felony conviction. (Id.) Wholly missing from Plaintiff's allegations was how these alleged comparators' conduct compared to Plaintiff's threatening behavior.

Numerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was "entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at [the company], how their conduct compared to plaintiffs' or how they were treated differently by defendants." Haggood v. Rubin & Rothman, LLC, No. 14-CV-34, 2014 WL 6473527, at * 12. (E.D.N.Y. 2014); see e.g., Jenkins v. St. Luke's–Roosevelt Hosp. Ctr., No. 09-CV-12, 2009 WL 3682458, at *8 (S.D.N.Y. Oct. 29, 2009) (dismissing complaint where plaintiff failed to allege comparator's conduct was "of comparable seriousness" to plaintiff's conduct). Therefore, Plaintiff's Section 1981 claim was dismissed as he failed to demonstrate that he was similarly situated in all material respects to the eight individuals and thus did not allege the requisite plausible inference of discrimination. (See 2018 Order at 18-20.)

In his instant motion, Plaintiff attaches the same list of eight employees but still fails to allege that he is similarly situated to any one of them. (Letter Response at 19.) The only additional

13

fact Plaintiff now alleges is that he was the only Canadian shaping for work in Spring 2013.[6] (Id. at 2.) However, the mere fact that Plaintiff was the only Canadian shaping for work does not, given all of the circumstances here, give rise to an inference that his termination was motivated by discrimination. See De La Peña, 953 F. Supp. 2d at 413 ("The fact that the Plaintiff was the only Filipino in his office is not sufficient to connect the Defendants' actions and behavior to a discriminatory intent. . . . However, merely acknowledging a stereotype which may have negative connotations, combined with the alleged facts that the Plaintiff was the only Filipino in the office and had experienced different forms of treatment than his coworkers, still does not make the Plaintiff's claim sufficiently plausible.")

As the Court's prior Order explains, the conduct the comparators allegedly engaged in is not comparable to Plaintiff's own conduct. Plaintiff presents no allegations that any of these individuals threatened to kill any of their colleagues. Allegations of their other alleged misdeeds, without more, does not plausibly allege disparate treatment of Plaintiff. See Jenkins, 2009 WL 3682458, at *8 (dismissing disparate treatment claim because the plaintiff's comparator "is not

---

[6] Plaintiff now alleges that his ex-wife sent the threatening text rather than him; however, this does not change the Court's analysis. (See Letter Response at 13.) As an initial matter, there are multiple allegations in Plaintiff's own submissions that cast doubt on that allegation—including the later threatening text messages sent by Plaintiff as well as the fact that, shortly after the text message at issue was sent, Plaintiff decided to seek treatment. (See 2018 Order at 4, n. 4.) In any event, even accepting Plaintiff's claim that his ex-wife sent the text, Plaintiff concedes that a threatening text message was sent to his colleagues. It is the existence of this threatening text message that supplies Defendant's legitimate nondiscriminatory reason for Plaintiff's termination; whether or not Plaintiff actually sent the message is, ultimately, not at issue. See McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what motivated the employer.") (emphasis in original) (internal quotation marks omitted). There is nothing in Plaintiff's filings to indicate that the Union knew that it was Plaintiff's ex-wife—and not Plaintiff—who sent the threatening text message at issue. Finally, the fact that Plaintiff's ex-wife is related to members of Local 817 (see Supp. Letter Response at 2) does not help Plaintiff's discrimination claim. Plaintiff's apparent suggestion that these members of Local 817 may have conspired with his ex-wife because they were related to her only further shows that Plaintiff has not alleged a plausible discrimination claim—Section 1981 and Title VII do not "forbid[] favoritism, nepotism, or cronyism, so long as it is not premised on animus against a protected class." See Village of Freeport v. Barella, 814 F.3d 594, 613 (2d Cir. 2016); Glover v. Fed'n of Multicultural Programs, No. 14 Civ. 4006, 2015 WL 4600645, at *5 (E.D.N.Y. July 29, 2015).

alleged to have engaged in all of the same misconduct as [the] [p]laintiff and cannot be said to have been similarly situated in all material respects") (internal quotation marks omitted)); Opoku v. Brega, No. 15-CV-2213, 2016 WL 5720807, at *8 (S.D.N.Y. Sept. 30, 2016) (finding allegations other employees "committed mistakes but were not formally written up [cannot] plausibly support a minimal inference that Plaintiff's violation/discipline report and various attitude-related write-ups were motivated at least in part by racial discrimination").

In short, it is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations that plausibly suggest the purported comparators were similarly situated. "Even on a motion to dismiss, a court cannot accept naked assertions in a complaint that does not set forth supporting allegations of facts." Sosa v. New York City Dept. of Educ., 368 F. Supp. 3d 489, 514 (E.D.N.Y. 2019) (citation omitted) see, e.g., Stinnett v. Delta Air Lines, Inc., 278 F. Supp. 3d 599, 612 (E.D.N.Y. 2017) (dismissing Title VII disparate treatment claims because "Plaintiff failed to demonstrate that she was similarly situated in all material respects to the male employees she identifies") (quotations omitted). The Second Circuit has affirmed dismissals where, as here, the complaint only "allege[d] facts consistent with a discrimination claim," i.e. that members outside the plaintiff's protected group were treated differently, because the complaint "stop[ped] short of the line between possibility and plausibility of entitlement to relief." Sanders v. Grenadier Realty, Inc., 367 Fed. App'x 173, 175 (2d Cir. 2010) (quotation marks in second quotation omitted) (quoting Iqbal, 556 U.S. at 678); see also Kajoshaj v. City of New York, No. 11–CV–4780, 2013 WL 249408, at *2 (E.D.N.Y. Jan. 23, 2013) ("[W]ithout specific factual allegations concerning these allegedly similarly situated individuals, [plaintiff's] bare conclusion cannot survive a motion to dismiss."), aff'd 543 Fed. App'x. 11 (2d Cir. 2013) (citation omitted). Plaintiff has not plead allegations from which it is plausible to conclude that the comparators are

15

similarly situated, and therefore, his conclusory assertions of disparate treatment are insufficient to maintain a Section 1981 claim. Accordingly, the Court denies Plaintiff's motion for reconsideration of his Section 1981 claim.

### D. State Law Claims

Plaintiff's complaint also asserts claims under New York law. However, as stated in the prior Order, because the Court dismissed all of Plaintiff's federal claims, it would be inappropriate for it to consider Plaintiff's state law claims unless there is diversity of citizenship. Though Plaintiff's original allegations stated that he was a New Jersey resident, he did not identify the citizenship of any of Local 817's members. (See 2018 Order at 22.) For diversity purposes, labor unions such as Local 817 are not citizens at all, and therefore require the court to look to the citizenship of each member of the union. See United Food & Commercial Workers Union, Local 919 v. Centermark Props, Meriden Square, Inc., 30 F.3d 298, 303 (2d Cir. 1994). The Court, therefore, instructed Plaintiff to show cause by October 31, 2018 why his state law claims should not be dismissed for lack of subject matter jurisdiction. (See 2018 Order at 23.) It further instructed Plaintiff to identify each member of Local 817 and allege sufficient facts to draw a conclusion as to each member's citizenship. (Id.)

Plaintiff's October 30, 2018 filing demonstrates that the Court does not have diversity jurisdiction over Plaintiff's state law claims. Plaintiff admits that some members of Local 817 members are residents of New Jersey. (Letter Response at 1.) Thus, since Plaintiff is a New Jersey resident, there is no diversity of citizenship. See United Food, 30 F.3d at 303 (noting that the citizenship of an unincorporated association "is determined by the citizenship of *each* of its members") (emphasis added).

As such, supplemental jurisdiction is the only potential basis for jurisdiction over Plaintiff's state law claims. However, having dismissed Plaintiff's federal claims, the Court concludes that exercising supplemental jurisdiction over his state law claims is unwarranted. See 28 U.S.C. § 1367(c)(3). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) . . . , courts should 'abstain from exercising pendent jurisdiction.' " Birch v. Pioneer Credit Recovery, Inc., No. 06–CV–6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting Walker v. Time Life Films, Inc., 784 F.2d 44, 53 (2d Cir. 1986)). Accordingly, the Court dismisses Plaintiff's state law claims without prejudice.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's motions for reconsideration and to amend his complaint are denied. Additionally, the Court dismisses Plaintiff's state law claims without prejudice.

Although Plaintiff paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should he seek *in forma pauperis* status for the purpose of an appeal, any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is directed to send a copy of this Order to the *pro se* Plaintiff and mark this case closed.

**SO ORDERED.**

Dated:  May 7, 2020
Central Islip, New York

                                                **/s/ (JMA)**
                                                Joan M. Azrack
                                                United States District Judge